# No. 22-2420

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

EPIC SYSTEMS CORPORATION,
*Plaintiff/Counterclaim Defendant–Appellee,*

v.

TATA CONSULTANCY SERVICES LIMITED & TATA AMERICA INTERNATIONAL
CORPORATION D/B/A TCS AMERICA,
*Defendants/Counterclaim-Plaintiffs–Appellants.*

———————————

Appeal from the U.S. District Court for the
Western District of Wisconsin, No. 14-cv-748 (Conley, J.)

## REPLY BRIEF FOR TATA CONSULTANCY SERVICES LIMITED
## AND TATA AMERICA INTERNATIONAL CORPORATION

Christopher M. Egleson
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6108

Robert N. Hochman
*Counsel of Record*
Neil H. Conrad
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

*Counsel for Tata Consultancy Services Limited
and Tata America International Corporation*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................... 1

ARGUMENT ............................................................................ 3

I.    Epic's Position Cannot Be Reconciled With This Court's
      Opinion And Remand Instructions In The First Appeal. ............... 3

II.   The District Court Should Not Have Deferred To The Jury's
      Verdict. ........................................................................... 13

III.  TCS Did Not Waive Or Forfeit The Arguments It Presses Now ... 15

IV.   A $140 Million Punitive Damages Award Cannot Be Justified.... 18

      A.    Epic Does Not Dispute That A Punitive Damages Award
            Of $140 Million Would Make This Case An Extreme
            Outlier As Compared To Other Cases In Wisconsin And
            Other Jurisdictions. ............................................... 18

      B.    A Nine-Figure Punitive Damages Award Would Be
            Unnecessary And Disproportionate In Light Of The
            Substantial Compensatory Damages Award And The
            Injunction. ........................................................... 22

      C.    Epic Offers No Principled Basis To Award Anything
            More Than Punitive Damages In The Range Of $10-25
            Million. ................................................................ 26

CONCLUSION ....................................................................... 27

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allahar v. Zahora,*
   59 F.3d 693 (7th Cir. 1995) .................................................. 12

*Bogan v. Stroud,*
   958 F.2d 180 (7th Cir. 1992) ............................................... 12

*Browning-Ferris Indus. of Vermont, Inc. v.*
   *Kelco Disposal, Inc.,*
   492 U.S. 257 (1989) .......................................................... 10

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,*
   532 U.S. 424 (2001) ............................................... 13, 14, 15

*Cygnar v. City of Chicago,*
   865 F.2d 827 (7th Cir. 1989) ....................................... 13, 14

*DeRance, Inc. v. PaineWebber Inc.,*
   872 F.2d 1312 (7th Cir. 1989) ....................................... 9, 12

*Donovan v. Penn Shipping Co.,*
   429 U.S. 648 (1977) (per curiam) ...................................... 10

*Epic Systems Corp. v. Tata Consultancy Services Ltd.,*
   980 F.3d 1117 (7th Cir. 2020) ..................................... *passim*

*Exxon Shipping Co. v. Baker,*
   554 U.S. 471 (2008) .......................................................... 12

*Fahrenberg v. Tengel,*
   291 N.W.2d 516 (Wis. 1980) ............................................. 10

*Honda Motor Co. v. Oberg,*
   512 U.S. 415 (1994) ............................................................ 5

*Houben v. Telular Corp.,*
   309 F.3d 1028 (7th Cir. 2002) ........................................... 11

*Johnson v. Zema Sys. Corp.*,
　170 F.3d 734 (7th Cir. 1999) ................................................. 17

*Lampley v. Onyx Acceptance Corp.*,
　340 F.3d 478 (7th Cir. 2003) ................................................. 14

*Lust v. Sealy, Inc.*,
　383 F.3d 580 (7th Cir. 2004) ................................................... 5

*Management Computer Services, Inc. v. Hawkins, Ash,*
　*Baptie & Co.*,
　557 N.W.2d 67 (Wis. 1996) .......................................... 20, 21

*Mathias v. Accor Economy Lodging, Inc.*,
　347 F.3d 672 (7th Cir. 2003) ................................................. 27

*Mayer v. Gary Partners & Co.*,
　29 F.3d 330 (7th Cir. 1994) .................................................. 10

*Merriweather v. Family Dollar Stores of Indiana, Inc.*,
　103 F.3d 576 (7th Cir. 1996) ................................................. 13

*Payne v. Jones*,
　711 F.3d 85 (2d Cir. 2013) ................................................. 8, 11

*Perez v. Z Frank Oldsmobile, Inc.*,
　223 F.3d 617 (7th Cir. 2000) ...................................... 6, 10, 12

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
　381 F.3d 717 (7th Cir. 2004) ................................................... 9

*Ross v. Black & Decker, Inc.*,
　977 F.2d 1178 (7th Cir. 1992) .............................................. 11

*Saccameno v. U.S. Bank Nat'l Ass'n*,
　943 F.3d 1071 (7th Cir. 2019) ........................................... 9, 15

*Schultz v. Thomas*,
　649 F. Supp. 620 (E.D. Wis. 1986) ....................................... 10

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
　538 U.S. 408 (2003) ...................................................... 17, 22

*Unified Catholic Schools of Beaver Dam Educ. Ass'n v.*
  *Universal Card Servs. Corp.*,
  34 F. Supp. 2d 714 (E.D. Wis. 1999) ........................................ 9, 12, 27

*Wellogix, Inc. v. Accenture, LLP*,
  823 F. Supp. 2d 555 (S.D. Tex. 2011), *aff'd*, 716 F.3d 867
  (5th Cir. 2013) ........................................................................... 8

## INTRODUCTION

Epic hardly defends the $140 million punitive damages figure on the merits. It offers no even arguably analogous case and does not dispute that the punitive damages award here would be an extreme outlier in Wisconsin and in trade secret cases across the country. Epic characterizes TCS's conduct as "egregious" and "extreme," but this Court already rejected that view. Epic suggests it faced "vast" "potential harm" but can cite no evidence for that hyperbole. *See Epic Systems Corp. v. Tata Consultancy Services Ltd.*, 980 F.3d 1117, 1144 n.5 (7th Cir. 2020) ("*Epic I*"). In truth, Epic was not financially vulnerable, and suffered no significant harm, competitive or otherwise. Epic argues that TCS is attempting to "escape responsibility," but ignores the $140 million compensatory damages award not at issue in this appeal and which TCS has already paid. And, as Epic once recognized, that nine-figure compensatory damages award *already* performs a "deterrent function." Given the size of that award and the absence of any loss suffered by Epic, the massive punitive damages award cannot be justified.

Unable to defend the award on substance, Epic throws up a variety of procedural roadblocks. It argues that this Court left the district court no authority to further reduce punitive damages on remand below the constitutional maximum of $140 million, that the district court had to defer to the jury's runaway verdict, and that TCS waived its right to contest the punitive damages award further on remand.

Nothing prevents this Court from reaching the merits here and preventing this wild outlier punitive damages award from standing. This Court's remand instruction necessarily contemplated further litigation of precisely that issue, which was fully briefed to the district court. The district court explicitly and incorrectly disregarded that briefing as unhelpful.

The $140 million award cannot stand. The punitive damages amount is a legal judgment, not a factual finding by a jury, and so no deference is owed to the jury's (indefensible) verdict. This Court should order entry of an award in the range of $10-$25 million, which, when combined with the already substantial "unjust enrichment" award, provides an amply sufficient degree of deterrence.

# ARGUMENT

## I.   Epic's Position Cannot Be Reconciled With This Court's Opinion And Remand Instructions In The First Appeal.

The district court did not conduct the inquiry required by this Court's opinion and remand instructions from the first appeal. The district court rejected TCS's challenges to the $140 million punitive damages figure because they were "largely unmoored from the *constitutional* considerations articulated by the Supreme Court in *Gore* and already applied by the Seventh Circuit," and there was therefore no "*constitutional* basis for a further reduction." (A9 (emphases added); *see also id.* (the district court stating it was "only being asked to decide on remand whether a twice reduced award of $140 million is still *constitutionally* infirm") (emphasis added).) But this Court had already determined the constitutional limit for punitive damages, so the point of the remand had to be for the district court to consider whether $140 million was excessive under non-constitutional principles.

Epic's response is to argue that there was, in fact, no reason to remand; that the prior panel ruling left no questions for the trial court to answer. As Epic puts it now, "[o]n remand, all that was left for the district court to do was amend the judgment consistent with this

3

Court's constitutional analysis in the first appeal." (Epic Br. 24; *see also id.* at 20, 22.) This is consistent with what Epic told the district court, where it argued that the district court "lack[ed] the authority to pick a different punitive damage number" (R.1041:4) and could not do anything other than "enter a new judgment including a $140 million punitive damage award" (*id.* at 5).

But Epic's view disregards the plain language of this Court's earlier decision, the specific revisions this Court made when it amended its opinion, and standard federal court practice. This Court did not direct the district court to enter judgment for a particular amount of punitive damages fixed by the constitutional maximum set by this Court in the first appeal. As TCS explained, that would have been easy enough to do and consistent with routine practice. (TCS Br. 27-28 & n.4 (collecting cases).) Instead, this Court remanded because there was still more for the district court to determine in addition to the constitutional limits for punitive damages decided by this Court.

This Court expressly remanded "the issue of the amount of punitive damages" with the instruction "to reduce the punitive-damages award consistent with the analysis in this opinion." *Epic I*, 980 F.3d at

4

1146 (emphasis added). As TCS explained (Br. 28), the "analysis in this opinion" included reference to decisions discussing *non-constitutional* reasons to reduce punitive damages. In particular, this Court emphasized that "the precise award" in any given case depends not on ratios or mathematical formulas but on the particular "facts and circumstances of the defendant's conduct and the harm to the plaintiff." 980 F.3d at 1144 (emphases added) (citation omitted).

As TCS explained (Br. 30-33), this Court's opinion is consistent with federal courts' authority, separate and apart from the Constitution, to ensure that outlier punitive-damages rulings utterly inconsistent with the practice of juries in a state are reined in. *See Honda Motor Co. v. Oberg*, 512 U.S. 415, 421 (1994) ("Judicial review of the size of punitive damages awards has been a safeguard against excessive verdicts for as long as punitive damages have been awarded."); *Lust v. Sealy, Inc.*, 383 F.3d 580, 590 (7th Cir. 2004) ("Long before anyone thought the Constitution placed a limit on damages, damages awards were being set aside as excessive."). The Court's opinion is also consistent with the principle that federal courts oversee a rational system of justice and have the supervisory authority to

ensure that federal juries produce reasonable federal judgments. That is what it means to say, as this Court has emphasized, that "[r]andom and freakish punitive awards have no place in federal court." *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617, 625 (7th Cir. 2000).

This Court, no doubt, carefully considered the scope of remand to the district court. After both sides had filed petitions for rehearing (with Epic's directly challenging the Court's ruling on punitive damages (*see* 7th Cir. No. 19-1528, Dkt. 59)), this Court amended its opinion to explain the importance of exercising judgment and reducing punitive damages awards in some cases to less than the due process maximum. This Court specifically added:

> As we reminded the litigants in *Saccameno*, "the Constitution is not the most relevant limit to a federal court when assessing punitive damages, as it comes into play 'only after the assessment has been tested against statutory and common-law principles.'" *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1086 (7th Cir. 2019) (quoting *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617, 625 (7th Cir. 2000)). "The Constitution is the only federal restraint on a state court's award of punitive damages," but federal judges are not restricted to reducing punitive damages in a federal case. *Id.* (citing *Perez*, 223 F.3d at 625). Indeed, "[a] federal court … can (and should) reduce a punitive damages award sometime before it reaches the outermost limits

6

of due process." *Id.* (citing *Perez*, 223 F.3d at 625;
*Payne v. Jones*, 711 F.3d 85, 97-100 (2d Cir.
2013)).

*Epic I*, 980 F.3d at 1140; *see also* R.1042-1:71 (redline comparing this

Court's August 20, 2020 opinion with its amended November 19, 2020

opinion). Epic has no explanation for the revisions to the opinion that

conform to its view of the scope of remand.

Notwithstanding Epic's suggestion to the contrary (*see* Epic Br.

17, 26), identification of the due process maximum was not the end of

the inquiry; what remained was to determine the appropriate award

within that limit. As this Court stated: the district court was supposed

to "reduce punitive damages to, *at most*, $140 million." *Epic I*, 980 F.3d

at 1145 (emphasis added). Rote entry of a judgment for $140 million in

punitive damages is inconsistent with this instruction.

Epic argues that the doctrine of "constitutional avoidance" means

that this Court's constitutional analysis in *Epic I* necessarily came *after*

this Court already considered and rejected the possibility that the

award was excessive on a non-constitutional basis. (Epic Br. 25-26.) Not

so. Even a constitutionally permissible award can be excessive. *See Epic*

*I*, 980 F.3d at 1140. And nothing prevents a court from first

7

determining the constitutional outer-bound of a punitive damages award, and *then* deciding whether the award is nevertheless excessive. *See, e.g.*, *Wellogix, Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555, 573-74 (S.D. Tex. 2011) (first analyzing constitutionally permissible outer-limit for a punitive damages award, then reducing the award substantially below that limit), *aff'd*, 716 F.3d 867 (5th Cir. 2013); *accord Payne v. Jones*, 711 F.3d 85, 97 (2d Cir. 2013) ("A federal appellate court is not required to find that the jury's award was so excessive as to violate due process, as the Supreme Court was compelled to find in *Gore*, in order to justify setting the award aside.").

Epic also argues that federal courts do not have the authority to review punitive damages awards separate and apart from the Constitution in diversity cases because there "is no federal common law of punitive damages applicable to state-law claims," and when a federal court evaluates punitive damages in a dispute arising under state law, "the Constitution imposes the only federal restraint." (Epic Br. 29 (quoting *Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 955 (7th Cir. 2018).) But Epic's position misunderstands TCS's argument and the law applicable to it.

Even when evaluating a punitive damages award based on a state-law claim, federal courts still "can (and should) reduce a punitive damages award" under "statutory and common-law principles," notwithstanding the constitutionally permissible outer-limit. *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1078, 1086 (7th Cir. 2019) (citation omitted); *see also, e.g.*, *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 735 (7th Cir. 2004) (applying Illinois law to reduce punitive damages award for defamation claim). At issue here is a Wisconsin claim. "[U]nder Wisconsin law, a jury award of punitive damages is subject to the control of the trial court," and the "trial court has the power to reduce the amount of punitive damages to what it determines is a fair and reasonable amount for such kind of conduct." *Unified Catholic Schools of Beaver Dam Educ. Ass'n v. Universal Card Servs. Corp.*, 34 F. Supp. 2d 714, 718 (E.D. Wis. 1999) (citing *Fahrenberg v. Tengel*, 291 N.W.2d 516, 526 n.12 (Wis. 1980)). Accordingly, "any punitive award which is more than necessary to punish or deter or which inflicts a penalty … disproportionate to the wrongdoing is excessive." *DeRance, Inc. v. PaineWebber Inc.*, 872 F.2d 1312, 1328 (7th Cir. 1989) (citation and internal quotation marks

9

omitted); *see also Fahrenberg*, 291 N.W.2d at 527 ("An award which is more than necessary to serve its purposes (punishment and deterrence) or which inflicts a penalty or burden on the defendant which is disproportionate to the wrongdoing is excessive and is contrary to public policy."); *Schultz v. Thomas*, 649 F. Supp. 620, 625 (E.D. Wis. 1986) (same). The district court failed to conduct this inquiry at all, and as discussed further below, the $140 million punitive damages award cannot stand when it is applied. *See infra* at 18-27.

Epic criticizes TCS for citing federal cases that found a punitive damages award excessive under federal common law.[1] But there is no

---

[1] Epic claims that TCS "manufacture[d] a 'federal common law' theory." (Epic Br. 27-34 (citing TCS Br. 32 n.5).) TCS did no such thing. Rather, TCS simply observed that the "proper role of the trial and appellate courts in the federal system in reviewing the size of jury verdicts is ... a matter of federal law." *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 649 (1977) (per curiam); *see also Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989) ("In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether ... remittitur should be ordered."); *Perez*, 223 F.3d at 625 ("[W]hen a plaintiff seeks punitive damages in a federal case, it is unnecessary to look for limits in the Constitution," and courts may use "federal standards developed under Rule 59 without resorting to constitutional reasoning" (citation and internal quotation marks omitted)); *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 334 (7th Cir. 1994) ("When deciding whether verdicts in diversity cases are

conflict between federal and Wisconsin law on this point, so it is appropriate to look to federal cases. *See Houben v. Telular Corp.*, 309 F.3d 1028, 1030 (7th Cir. 2002) (noting that if there is "no conflict ... between federal law and state law," then there is no "need to decide which body of law governs"); *cf. Payne*, 711 F.3d at 97 & n.8 (applying federal common law "[d]espite differences in the verbal formulations as between" the New York and federal law standards for excessiveness of punitive damages, because "whether examined under the federal standard or New York's standard, ... the punitive damages award was excessive under either formulation").

TCS has consistently argued that $140 million in punitive damages is excessive under both Wisconsin and federal law. (TCS Br. 36-53.) Wisconsin and federal law both instruct federal courts to reduce punitive damages award as excessive if they determine that the award

---

excessive—and whether the remedies of remittitur and additur are available in the first place—federal courts use their own rules."); *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1189 (7th Cir. 1992) (explaining that, in a diversity action, "the factors a jury may consider in determining the amount of punitive damages are governed by state law," but "[f]ederal law … governs the district court's review of the jury award and appellate review of the district court's decision" (citation and internal quotation marks omitted)).

is not "a fair and reasonable amount for such kind of conduct." *Unified Catholic Schools*, 34 F. Supp. 2d at 718 (Wisconsin law); *accord Exxon Shipping Co. v. Baker*, 554 U.S. 471, 502 (2008) (holding that under federal common law, courts have the "responsibility" to review "high punitive awards ... because of the implication of unfairness that an eccentrically high punitive verdict carries"). And courts applying both Wisconsin and federal law analyze the reasonableness of a punitive damages award under the same standard: whether the award is "necessary to punish or deter" or instead "inflicts a penalty … disproportionate to the wrongdoing." *See DeRance*, 872 F.2d at 1328 (Wisconsin law); *accord Perez*, 223 F.3d at 625 ("Federal judges may, and should, insist that the award be sensible and justified by a sound theory of deterrence. Random and freakish punitive awards have no place in federal court, and intellectual discipline should be maintained."); *Bogan v. Stroud*, 958 F.2d 180, 185 (7th Cir. 1992); *Allahar v. Zahora*, 59 F.3d 693, 696-97 (7th Cir. 1995). Epic has never suggested otherwise.[2]

---

[2] TCS has not waived this argument, and this Court did not hold otherwise in *Epic I*. *See infra* at 16-17 & n.3, 18-19.

## II.    The District Court Should Not Have Deferred To The Jury's Verdict.

The district court, rather than evaluate the arguments TCS had presented, inappropriately deferred to the jury's verdict. As TCS explained (Br. 25), although courts once viewed punitive damages awards as "the sort of judgment peculiarly within the province of the finder of fact" and therefore subject to great deference, *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 582 (7th Cir. 1996), the Supreme Court has since clarified that "the jury's award of punitive damages does not constitute a finding of 'fact.'" *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 437 (2001).

Epic's response to this argument is, in effect, to urge this Court now to disregard *Cooper*. It relies on two cases, neither of which even considered the implications of *Cooper*. (Epic Br. 33-34.)

The first could not have considered *Cooper* because it predates *Cooper*. *Cygnar v. City of Chicago*, 865 F.2d 827 (7th Cir. 1989). *Cygnar* addresses compensatory, not punitive, damages. *Id.* at 847. In *Cooper*, the Supreme Court distinguished compensatory and punitive damages on precisely the basis Epic asks this Court to ignore: "Unlike the measure of actual damages suffered, which presents a question of

historical or predictive fact, the level of punitive damages is not really a 'fact' 'tried' by the jury." *Cooper*, 532 U.S. at 437 (citations omitted). Moreover, this Court in *Cygnar* did *not* defer to the jury's verdict. *See id.* at 848 ("The jury's award of $55,000 in this case … is clearly excessive … ."). The second case, *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478 (7th Cir. 2003), postdates *Cooper* but does not discuss it, and simply quotes, without analysis, a 2000 Ninth Circuit opinion that predates *Cooper*. *See id.* at 486 (quoting *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000)).

Epic also notes that this Court "deferred to the jury's judgment in *Epic I*" (Epic Br. 34), but not in a way that mattered to the issue on remand. That deference concerned whether there was a legally sufficient evidentiary basis for an award of punitive damages *at all*, not whether the amount was justifiable. *Epic I*, 980 F.3d at 1136 (viewing the facts and evidence in the light most favorable to the jury's verdict under Rule 50). As *Cooper* explains, the *amount* of punitive damages is a different question because it represents a legal judgment about the proper level necessary to effectuate the purposes of punitive damages, which are to punish and to deter. *See* 532 U.S. at 437-40.

Epic also asserts that giving federal courts the authority to reduce a "jury's carefully considered punitive-damages award is inconsistent with the Seventh Amendment." (Epic Br. 34.) But that contention has been rejected by this Court and others. *See Saccameno*, 943 F.3d at 1092 (rejecting Seventh Amendment argument and noting that this Court "agree[s] with every circuit to address this question that the constitutional limit of a punitive damage award is a question of law not within the province of the jury, and thus a court is empowered to decide the maximum permissible amount without offering a new trial"); *see also Cooper*, 532 U.S. at 439 ("it is clear that juries do not normally engage in such a finely tuned exercise of deterrence calibration when awarding punitive damages").

Finally, Epic just ignores that deferring to the jury is impossible here in any meaningful sense. (*Compare* TCS Br. 26, *with* Epic Br. 33-34.) The jury returned a runaway $700 million punitive damages award that has already been *twice* reduced because it is legally indefensible.

## III. TCS Did Not Waive Or Forfeit The Arguments It Presses Now.

Epic expends little effort attacking the substance of TCS's argument. Instead, it asks this Court not even to consider it because, in

Epic's view, the argument has been waived. (*See, e.g.*, Epic Br. 20, 23-25, 27-28, 33.) But there was no waiver, and no value would be served by finding one here.

Epic concedes, as it must, that "TCS previously presented each of these challenges to the district court, both post-trial and post-remand, as a challenge to the punitive-damages award on state-law or federal constitutional grounds." (Epic Br. 35.) Epic's only quibble is that TCS has "repackag[ed]" arguments it has made previously, including in the first appeal. (*Id.* at 36.)

This does not constitute waiver or forfeiture. Indeed, this Court in the first appeal correctly understood that TCS's arguments regarding the excessiveness of the punitive damages award fully encompassed the arguments it presses now. That is why this Court remanded the case after setting the constitutional maximum for further consideration by the district court. And on remand the district court did not find that TCS had waived any of the relevant arguments.[3] On the contrary, the

---

[3] To be clear, the district court observed that this Court found that TCS had waived or forfeited two arguments that are not relevant to this appeal. (*See* A8-9.) First, this Court found that TCS had forfeited an argument that some number other than the $140 million compensatory damages figure should have been used as the denominator of the ratio

district court stated that TCS "rehash[ed] the same arguments" it had previously made (A5), a refrain repeated by Epic in the current appeal. (*See* Epic Br. 35; *see also* R.1041:11 ("There is no basis for TCS to raise the same arguments a fourth time.").)

The purpose of enforcing waiver or forfeiture on appeal is to prevent a litigant from sandbagging the district court by presenting for the first time on appeal arguments never raised before. *Cf. Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741-42 (7th Cir. 1999). That concern is not present here.

---

for purposes of assessing the second guidepost in the constitutional due process analysis under *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 424-25 (2003). *Epic I*, 980 F.3d at 1143 ("TCS has thus waived any argument that the compensatory award is the incorrect denominator in the ratio analysis."). Second, this Court found that TCS "waived any argument" that a comparison to civil penalties "points toward the award being unconstitutional" as a matter of due process. *Id.* at 1145.

**IV.  A $140 Million Punitive Damages Award Cannot Be Justified.**

> **A.  Epic Does Not Dispute That A Punitive Damages Award Of $140 Million Would Make This Case An Extreme Outlier As Compared To Other Cases In Wisconsin And Other Jurisdictions.**

Epic does not dispute that one of the factors this Court should consider when assessing the appropriate award (under both Wisconsin and federal law) is whether the award is "out of line compared to other awards in similar cases." (TCS Br. 42 (quoting *DeRance*, 872 F.2d at 1329).) Nor does Epic dispute that imposing a punitive damages award of anywhere close to $140 million would make this case the only one of its kind under Wisconsin law and an extreme outlier when compared to cases in other jurisdictions as well. (TCS Br. 42-52.) Epic fails to cite even one analogous case (*see* Epic Br. 40-42)—*i.e.*, a case involving no actual or threatened physical harm, only minor economic harm at most, a plaintiff that is not financially vulnerable, and a substantial compensatory damages award that already performs a deterrent function—as a possible anchor for the award it seeks here.

Unable to reconcile its position with the caselaw, Epic dismisses the comparison to other cases, claiming that the Seventh Circuit held

that TCS waived this argument. (Epic Br. 40.) Not so. The Seventh

Circuit held that TCS forfeited an argument that, as a constitutional

due process matter, a comparison to civil penalties in other cases would

render the award unconstitutional. *See Epic I*, 980 F.3d at 1145; *supra*

at 16 n.3. But, once again, this appeal is not about determining the

maximum permissible award as a matter of due process; it is about

determining the appropriate award within that permissible limit. There

is no Wisconsin case involving a punitive damages award anywhere

close to $140 million where the conduct did not involve a vulnerable

victim or bodily or environmental harm. The only two Wisconsin cases

with punitive damages awards of $100 million or more involved facts

and aggravating circumstances not present here. Moreover, neither

award survived an appeal.

Epic also fails to grapple with the fact that many of the cases TCS

cited involve *lower* punitive damages and *more egregious* facts. As TCS

explained, even in cases where there has been actual use of

misappropriated information causing actual competitive injury to the

plaintiff, both punitive damages awards and the total judgments have

been much lower than $140 million and $280 million, respectively. (TCS

Br. 43-49 (collecting cases).) Moreover, as TCS explained, any argument for imposing a nine-figure punitive damages award is even weaker here because the nine-figure compensatory damages award provides much more than is necessary to make Epic whole for any injury it might have suffered. (*Id.* at 38-40.) Epic has no response.

Epic falls back on its claim that TCS's conduct was "egregious" and "extreme" to justify the outlier status of a $140 million punitive damages award. (Epic Br. 20, 41, 42.) But this Court specifically rejected that conclusion: "TCS's conduct, while reprehensible, was not egregious." *Epic I*, 980 F.3d at 1144. In fact, TCS "caused no physical harm to Epic" and "did not recklessly disregard the safety of others." *Id.* at 1142. Nor was Epic "a financially vulnerable plaintiff." *Id.*

Epic's claim that TCS's conduct was "vastly more egregious than the conduct of any other defendant to face a trade secret suit in Wisconsin" history (Epic Br. 41)—much less the country since Epic does not cite any even arguably analogous case from outside Wisconsin, either—is absurd. For example, in *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.*, the jury awarded the plaintiff $1 million in compensatory damages and $1.75 million in punitive damages for

20

trade secret misappropriation. 557 N.W.2d 67, 73, 79-80 (Wis. 1996). Unlike here, the defendant actually copied the plaintiff's software and used it in competition with the plaintiff. *Id.* at 73. The defendant also took affirmative steps to conceal the theft to ensure that the plaintiff would not discover the wrongdoing. *Id.* The Wisconsin Supreme Court held that, in spite of these "grievous and malicious" acts, *id.* at 82, the $1.75 million award was "excessive and … more than [was] necessary to serve the purposes of punitive damages," *id.* at 83. Although the defendant "engaged in affirmative acts of misconduct requiring a substantial penalty in order to punish and deter," the defendant's "wrongful conduct caused only economic injuries" to the plaintiff, which weighed against the jury's punitive damages award. *Id.* In the court's view, "a punitive damages award of $1.75 million"—even though there was evidence of actual copying and competitive injury to the plaintiff— was "shocking to the conscience of the court." *Id.*

TCS's misconduct was undoubtedly serious, but it defies reason to say that a punitive damages award 80 times larger than the award struck down in *Management Computer Services* is consistent with Wisconsin and federal law. Unlike the defendant in *Management*

21

*Computer Services*, TCS did not copy any software and did not cause any competitive harm. And, given the size of the compensatory award, which this Court already characterized as far more than what has been considered "substantial" in other cases, *Epic I*, 980 F.3d at 1143, there is even less justification for the enormous punitive award here. *Cf. State Farm*, 538 U.S. at 425 ("When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."). Plus, the far-more-than-substantial "compensatory" damages award here does not actually compensate Epic for any harm and is instead based on the benefit to TCS, which only underscores the outlier nature of this punitive damages award when compared to awards in other cases. Epic's failure to offer even one analogous case speaks volumes.

### B.   A Nine-Figure Punitive Damages Award Would Be Unnecessary And Disproportionate In Light Of The Substantial Compensatory Damages Award And The Injunction.

Epic does not dispute any of the key legal principles that govern the determination of the appropriate amount of punitive damages. It does not dispute that, under both Wisconsin and federal law, punitive damages must not exceed what is required to serve the objectives of

deterrence and punishment. (TCS Br. 34-35.) It does not dispute that, because punitive damages awards should be limited to serving these specific objectives, courts must take care to ensure that punitive damages do not become a windfall to the plaintiff. (*Id.*) It does not dispute that this concern with avoiding an impermissible windfall is heightened when the plaintiff has received a significant compensatory damages award, as Epic has here. (*Id.* at 39.) And it does not dispute that this logic applies with even greater force in this case because the substantial "compensatory" award does not in fact compensate Epic for any injury. (*Id.* at 39-40.) Although Epic does not dispute any of these points, it makes no serious attempt to justify why a punitive damages award of $140 million is necessary to serve the objectives of deterrence and punishment.

Epic argues that without a substantial punitive damage award, TCS will not be adequately deterred. (Epic Br. 38-39.) But Epic completely ignores that the compensatory damages award here *already* serves a "deterrent function"—a fact Epic admitted when attempting to reassure the district court that the nine-figure unjust enrichment damages award (*i.e.*, the so-called "compensatory" award) was

appropriate. (R.926:15.) It is undisputed that Epic sustained no out-of-pocket losses (other than the costs of its investigation), faced no new competition, lost no business, and did not lose any of the benefits of its own development efforts. Rather, the $140 million "compensatory" damages award was designed to strip TCS of what the jury found to be TCS's benefit and to deter future misconduct.

The injunction this Court entered also undermines any argument for a punitive damages award of anywhere close to $140 million. Contrary to Epic's characterization, TCS is not arguing that the injunction means TCS should not be punished for past conduct. (*See* Epic Br. 37-38.) TCS's argument is that the injunction is relevant when considering whether a nine-figure punitive damages award is necessary for deterrence and to prevent the risk of future harm. (TCS Br. 40.) The injunction minimized the risk of potential harm, and Epic does not dispute that TCS fully complied with the injunction, at substantial cost. (*Compare id.*, *with* Epic Br. 37-38.) If Epic seriously believed TCS's conduct created the risk of "vast" "potential harm" (Epic Br. 42), it would have activated the monitor to observe TCS's post-trial activities during the two-year period when it had the opportunity to do so (*see*

TCS Br. 18, 38 & n.7). But Epic did not. Given the substantial unjust enrichment award and the injunction, an extreme-outlier punitive damages award would serve no legitimate purpose.

Epic suggests that such a large award is nevertheless justified because of certain outside-the-record "evidence" that was appended to its post-remand brief, such as public statements TCS made about the litigation after the trial. (Epic Br. 38 (citing R.1041 (Epic's post-remand brief on punitive damages)).) Most of the referenced statements were made after the beginning of the first appeal, during which TCS expressly acknowledged in court filings the seriousness of its misconduct and did not challenge liability. The statements Epic references refer to the fact that TCS challenged the compensatory and punitive *damages awards* on appeal, including in its petition for rehearing en banc. (*See* Epic Br. 38; *accord* R.1041-1, Exhibit A, Table at first and second rows.) TCS's disagreement about how to measure the impact of the wrongs committed does not deny that wrongs were committed. Moreover, Epic's claim that "TCS has never, to Epic's knowledge, publicly acknowledged that what it did was wrong" (Epic Br. 38) is belied by its own brief. As Epic recognizes, TCS did not

challenge liability in the first appeal and expressly admitted that its employees engaged in misconduct, including by lying to investigators.[4] (Epic Br. 10 (quoting TCS's Opening Brief in first appeal at 20).)

### C. Epic Offers No Principled Basis To Award Anything More Than Punitive Damages In The Range Of $10-25 Million.

Based on the record and the caselaw, the punitive damages award should be, at most, in the range of $10-25 million. (TCS Br. 52-53.) Epic offers no principled basis to set an award outside that range. It repeats its arguments that the jury verdict deserves deference (Epic Br. 42-43), which fails for the reasons discussed above. *See supra* at 13-15. And it concludes by claiming that a nine-figure punitive damages award is justified by the sheer size and profitability of TCS. (*Id.* at 43-45.) But, as this Court has made clear, "sanctions should be based on the wrong

---

[4] Epic claims that "TCS has avoided paying Epic what it owes." (Epic Br. 3.) On the contrary, TCS has paid the compensatory damages judgment and costs award in full, with interest. The only amount TCS has "avoided paying" is an amount that indisputably was not determined—and thus could not have been paid in any event—until the district court's amended punitive damages judgment, which is the subject of this appeal. Epic also does not allege that TCS has failed to comply with the district court's Agreed Order Regarding Security During Post-Judgment Proceedings and Appeal (R.1008) to which, as indicated by its name, Epic voluntarily agreed.

done rather than on the status of the defendant; a person is punished for what he does, not for who he is, even if the who is a huge corporation." *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 676 (7th Cir. 2003); *see also Unified Catholic Schools*, 34 F. Supp. 2d at 719 ("Under Wisconsin law, plaintiff's right to punitive damages is [ ] based ... on the character of the defendant's conduct."). TCS's conduct and the minimal economic harm it caused Epic do not justify the award that Epic seeks here. Awarding anything close to $140 million on top of the nine-figure unjust enrichment award that is already much more than necessary to compensate Epic for any harm it might have sustained would give Epic an impermissible windfall.

## CONCLUSION

For these reasons and the reasons discussed in TCS's opening brief, the Court should vacate the district court's $140 million punitive damages award and remand for a redetermination of punitive damages within the range of between $10 million and $25 million.

January 20, 2023                                 s/ Robert N. Hochman
                                                 Robert N. Hochman
                                                     *Counsel of Record*
                                                 Neil H. Conrad

27

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
rhochman@sidley.com

Christopher M. Egleson
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6108
cegleson@sidley.com

*Counsel for Tata Consultancy
Services Limited and Tata
America International
Corporation*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii), as modified by Circuit Rule 32(c). The brief contains 5,654 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), as modified by Circuit Rule 32(b), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.


January 20, 2023                         s/ Robert N. Hochman
                                        Robert N. Hochman
                                        SIDLEY AUSTIN LLP
                                        One South Dearborn
                                        Chicago, IL 60603
                                        (312) 853-7000
                                        rhochman@sidley.com

                                        *Counsel for Tata Consultancy
                                        Services Limited and Tata
                                        America International
                                        Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

January 20, 2023

<u>s/ Robert N. Hochman</u>
Robert N. Hochman
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
rhochman@sidley.com

*Counsel for Tata Consultancy Services Limited and Tata America International Corporation*